NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VZW WIRELESS CORP., EUN IM LIM, <br><br> Plaintiffs, <br><br> v. <br><br> WINSOME PAGING, INC., <br><br> Defendant. | Civil Action No.: 16-3043 (CCC)-(MF) <br><br> OPINION |

**CECCHI, District Judge.**

## I. INTRODUCTION

This matter comes before the Court on the motion of Winsome Paging, Inc. ("Defendant") to dismiss Counts I, II, and III of the Complaint, (ECF No. 1) ("Compl."), of VZW Wireless Corp. and Eun Im Lim (collectively, "Plaintiffs"), as well as Defendant's motion to impose sanctions on Plaintiffs. (ECF No. 5) ("Mot. to Dismiss"). The Court has considered the submissions made in support of and in opposition to the instant motions, (ECF Nos. 6 ("Opp'n"), 7 ("Reply")), as well as the parties' supplemental briefs, (ECF Nos. 11, 12), as filed in response to this Court's order of February 23, 2017. (ECF No. 10). Pursuant to Fed. R. Civ. P. 78(b), no oral argument was heard. For the reasons set forth below, Defendant's motions are **DENIED**.

## II. BACKGROUND

Plaintiff VZW Wireless Corp. ("VZW") is a New York corporation based in Flushing, New York, which is wholly owned by Hoonsang Lim, Plaintiff Eun Im Lim's husband. (Compl. ¶¶ 4-5). Defendant is a New Jersey corporation, based in Bayonne, New Jersey, and an agent of Verizon Wireless "authorized to supply phones, accessories and wireless services, and to license the

1

Verizon name to 'sub agents' such as [VZW]." (*Id.* ¶¶ 4, 12). In 2001, Plaintiff VZW entered into a formal, written agreement (the "Authorized Retail Sub Agency Agreement") with Defendant to serve as Defendant's sub-agent, or franchisee, in Flushing, New York – *i.e.*, an agreement by which Plaintiff VZW sold Verizon products and services as supplied by Defendant. (*Id.* ¶ 12). The Authorized Retail Sub Agency Agreement expired by its own terms in 2006; however, Plaintiffs aver that the parties continued their dealings pursuant to a separate "implied by conduct" agreement with different terms. (*See id.* ¶¶ 14-15). Plaintiffs contend that beginning in 2010, Defendant breached this *de facto* agreement by: (1) reducing VZW's commission on sales of wireless services to 30% of the generated profit, rather than the bargained for 70%; (2) ceasing to pay residuals; (3) reducing VZW's flat rate commission for sales of hardware; and (4) improperly retaining co-op advertising funds provided by Verizon Wireless, which were intended to compensate VZW for expenditures related to a store opening.[1] (*Id.* ¶ 21). Finally, Plaintiffs aver that the parties terminated their relationship in or around July of 2015 and that, in an effort to resolve various outstanding disputes, the parties entered into a mutual release agreement (the "Release Agreement") covering any and all claims stemming from the Authorized Retail Sub Agency Agreement. (*Id.* ¶¶ 23, 32).

---

[1] Plaintiffs further contend that the parties entered into an agreement on or about May 10, 2015 in an effort to resolve the dispute over unpaid residuals. (*Id.* ¶ 26). This agreement, in the form of a promissory note, required that Defendant make a total payment of $190,000, in monthly installments of $10,000, to Plaintiff Eun Im Lim. Plaintiffs allege that Defendant has additionally violated this agreement by failing to make the required payments. (*Id.* ¶¶ 27-30). Defendant's motion does not address this particular claim. (Mot. to Dismiss at 4 n.1) ("The fourth and final count of plaintiffs' complaint is a cause pled by plaintiff Eun Im Lim for breach of contract. Count Four is not the subject of this motion.").

As a threshold matter, the parties disagree as to what state law governs Plaintiffs' breach of contract claims. Plaintiffs argue that, under the prevailing conflict of laws analysis, New Jersey law controls; Defendant, on the other hand, avers that New York law governs.

Defendant contends that the Release Agreement bars Plaintiffs' claims in Counts I, II, and III of the Complaint because they are essentially derived from the Authorized Retail Sub Agency Agreement. (Mot. to Dismiss at 5-7). Plaintiffs, in turn, contend that their claims do not stem from the Authorized Retail Sub Agency Agreement, but rather from the *de facto* agreement the parties entered into following the Authorized Retail Sub Agency Agreement's expiration. (Opp'n at 6-9). Therefore, Plaintiffs assert that their claims fall outside the scope of the Release Agreement and that Defendant's motion must be denied. (*Id.*).

Defendant has, additionally, moved for the imposition of attorneys' fees and costs in this matter, arguing that Plaintiffs' claims are inherently frivolous, and were filed with an intent to harass Defendant, in violation of Federal Rule of Civil Procedure 11(b). (Mot. to Dismiss at 7-8). Plaintiffs contend that Defendant's sanctions motion is procedurally deficient under Federal Rule of Civil Procedure 11(c), and that, moreover, their claims do not violate the provisions of Federal Rule of Civil Procedure 11(b). (Opp'n at 9-13).

## III. LEGAL STANDARD

### A. Choice of Law

"A federal court sitting in diversity applies the forum state's choice of law rules." *Feldman v. Mercedes-Benz USA, LLC*, No. 11-984, 2012 WL 6596830, at *5 (D.N.J. Dec. 18, 2012). The New Jersey Supreme Court has adopted the Second Restatement of Conflict of Laws' "most significant relationship" test. *See generally P.V. v. Camp Jaycee*, 962 A.2d 453 (N.J. 2008). The first step under this analysis "is to determine whether an actual conflict exists. That is done by

examining the substance of the potentially applicable laws to determine whether 'there is a distinction' between them." *Id.* at 460 (quoting *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)). If there is no conflict, then the law of the forum state applies. *Id.* "Second, if a conflict does exist, the Court must determine which state has the 'most significant relationship' to the claim, by 'weigh[ing] the factors set forth in the Restatement section corresponding to the [plaintiffs'] cause of action.'" *Feldman*, 2012 WL 6596830, at *5 (quoting *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011)).

### B. Fed. R. Civ. P. 12(b)(6)

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions . . . will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, when reviewing complaints for failure to state a claim, district courts should engage in a two-part analysis: "First, the factual and legal elements of a claim should be separated . . . . Second, a District Court must then determine whether the facts alleged in the complaint are

4

sufficient to show that the plaintiff has a 'plausible claim for relief.'" *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

### C. Fed. R. Civ. P. 11

Federal Rule of Civil Procedure 11 provides, in relevant part, that:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b). If a party violates this certification requirement then, by motion or *sua sponte*, the court "may impose an appropriate sanction . . . [including] an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *See* Fed. R. Civ. P. 11(c). However, "[t]he Third Circuit has specifically held that Rule 11's purpose 'is not wholesale fee shifting but correction of litigation abuse,' and [that] sanctions 'do not automatically or usually follow an adverse judgment or ruling. Substantially more is required.'" *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, No. 11-6239, 2013 WL 4431274, at *4 (D.N.J. Aug. 14, 2013) (quoting *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987)).

In terms of procedure, "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Moreover, the motion must be served on the opposing party at least 21 days prior to filing the motion with the Court, in order to allow the opposing party to withdraw or correct the issue within that 21 day period. *See id.*

## IV. DISCUSSION

### A. The Law Of The State Of New Jersey Governs This Action

Plaintiffs argue that "New Jersey law must apply because there is no conflict between New Jersey and New York law" in terms of breach of contract actions. (ECF No. 12 at 3-4). Defendant, in contrast, argues that the "most significant relationship" test mandates that the Court apply New York law to Plaintiffs' case. (ECF No. 11 at 2-4).

As this action is based on diversity, this Court will apply the choice of law analysis of the forum state in making its determination as to which state's law controls. *See Feldman*, 2012 WL 6596830, at *5. The first step under New Jersey's choice of law analysis is determining whether there is an actual conflict between the laws of New Jersey and New York as to breach of contract claims. *See Camp Jaycee*, 962 A.2d 453 at 460.

It is well-settled that under both New Jersey and New York law, "the cardinal rule in the interpretation of contracts is to ascertain and effectuate the common intention of the parties." *Moscowitz v. Middlesex Borough Bldg. & Loan Ass'n*, 87 A.2d 33, 36 (N.J. Super. Ct. App. Div. 1952); *see also Wiser v. Enervest Operating, L.L.C.*, 803 F. Supp. 2d 109, 116 (N.D.N.Y. 2011) ("Under the cardinal principle for construction and interpretation of contracts in New York, the intention of the parties controls."). Where the contract is "a written memorial of their bargain, the intent that controls is that expressed or apparent in the writing." *Moscowitz*, 87 A.2d at 36; *see also Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010) ("When interpreting a contract [under New York law], the 'intention of the parties should control, and the best evidence of intent is the contract itself.'" (alterations omitted) (quoting *Hatalmud v. Spellings*, 505 F.3d 139, 146 (2d Cir.2007)).

"[A] release is merely a form of contract and the general rules that apply to contract interpretation apply to releases." *Domanske v. Rapid-Am. Corp.*, 749 A.2d 399, 402 (NJ. Super. Ct. App. Div. 2000). Accordingly, there is no conflict between the laws of New Jersey and New York in regards to the interpretation of the Release Agreement at issue. The Court will therefore apply the law of New Jersey in adjudicating this action. *See Camp Jaycee*, 962 A.2d at 460.

### B. Plaintiffs' Claims As Plead In Counts I, II, & III Are Not Definitively Barred By The Release Agreement

Plaintiffs bring claims for breach of contract, unjust enrichment, and an accounting in Counts I, II, and III of the Complaint, respectively. (Compl. ¶¶ 33-52). Defendants argue that each of these claims derive from the Authorized Retail Sub Agency Agreement and, consequently, that they are barred by the plain terms of the Release Agreement. (Mot. to Dismiss at 5-7). Plaintiffs, in turn, contend that their claims stem from the *de facto* agreement that the parties entered into after the expiration of the Authorized Retail Sub Agency Agreement and that, therefore, their claims fall outside the scope of the Release Agreement. (Opp'n at 6-9).

Under New Jersey law, "in interpreting an agreement, [the court] 'must try to ascertain the intention of the parties as revealed by the language used, the situation of the parties, the attendant circumstances, and the objects the parties were striving to attain.'" *Barr v. Barr*, 11 A.3d 875, 882 (N.J. Super. App. Div. 2011) (quoting *Celanese Ltd. v. Essex Cty. Imp. Auth.*, 962 A.2d 591, 600-01 (N.J. Super. App. Div. 2009)). However, "when the terms of a contract are clear and unambiguous, there is no room for construction and the court must enforce those terms as written." *Watson v. City of E. Orange*, 815 A.2d 956, 959 (N.J. 2003).

The plain terms of the Release Agreement refer solely to the "Authorized Retail Sub Agency Agreement." (ECF No. 5-1). Moreover, the Release Agreement unambiguously states that "[VZW] will release WPI from all liability past, present and future *from the terms of the*

*Authorized Retail Sub Agency Agreement.*" (*Id.*) (emphasis added). According to the plain terms of the document, it is therefore plausible to read the Release Agreement as applying solely to claims under the Authorized Retail Sub Agency Agreement. This would further accord with "the 'rule of construction' that releases should be construed narrowly, *i.e.*, that 'words of a release should not be construed to extend beyond the express consideration mentioned so as to make a release for the parties which they never intended nor contemplated.'" *Carcaise v. Cemex, Inc.*, 200 F. App'x 116, 125 (3d Cir. 2006) (quoting *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885 (3d Cir. 1975)).

Defendant points to language in the Release Agreement stating that "WPI will pay . . . [VZW] the sums owed pursuant to a Payment Agreement dated May 10, 2015, and no other monies are due," for the proposition that the Release Agreement was intended as a broad, general release of liability. (Mot. to Dismiss at 6). Plaintiffs, however, argue that this clause merely functions so as to qualify liability under the Payment Agreement, which relates solely to the disputed residuals. (Opp'n at 7-8). Plaintiffs' reading of the Release Agreement's terms is, once again, reasonable in light of the provision's plain terms.

In sum, taking the "well-pleaded factual allegations in the complaint as true and draw[ing] all reasonable inferences in favor of the non-moving party," *Phillips*, 515 F.3d at 234, Plaintiffs have plausibly shown that the Release Agreement does not bar their contractual claims. Indeed, Plaintiffs have a plausible claim to relief based on their contention that the claims derive from Defendant's purported breach of a separate, *de facto* agreement entered into upon the expiration of the Authorized Retail Sub Agency Agreement. The Court therefore denies Defendant's motion to dismiss.

### C. Defendant's Motion For Sanctions Is Procedurally Deficient

Plaintiffs aver that Defendant has failed to comply with the procedural requirements of Federal Rule of Civil Procedure 11(c) in moving for the imposition of sanctions. Specifically, Plaintiffs contend that Defendant failed to serve Plaintiffs with its sanctions motion prior to filing it with this Court. (Opp'n at 10). Plaintiffs additionally state that Defendant improperly "incorporated its request for sanctions into its motion to dismiss." *Id.*

Defendant does not challenge Plaintiffs' assertion that the motion is procedurally deficient; rather, Defendant merely requests that, to the extent the motion is premature, this Court dismiss the motion without prejudice. (Reply at 3). Accepting Plaintiffs' averments as true, this Court finds Defendant's motion for sanctions procedurally deficient. This deficiency is, moreover, fatal to Defendant's motion. *See Metro. Life Ins. Co. v. Kalenevitch*, 502 F. App'x 123, 125 (3d Cir. 2012) (noting that the Third Circuit "has recognized that, '[i]f the twenty-one day period is not provided, the [Rule 11] motion *must* be denied.'" (emphasis added) (quoting *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 99 (3d Cir. 2008)); *Graco, Inc. v. PMC Glob., Inc.*, No. 08-1304 FLW, 2011 WL 868930, at *14 (D.N.J. Feb. 14, 2011) (denying, in part, a motion for sanctions where the motion was simultaneously served on the court and opposing party). Consequently, Defendant's motion for the imposition of sanctions is denied.

### V. CONCLUSION

Defendant's motion to dismiss Counts I, II, and III of Plaintiffs' Complaint is denied. Plaintiffs have stated a plausible claim that Defendant has breached a *de facto* contractual agreement, which claims are not barred by the terms of the Release Agreement. Defendant's motion for sanctions is, moreover, denied as procedurally deficient. An appropriate Order accompanies this Opinion.

Date: November 29, 2017

_____
**CLAIRE C. CECCHI, U.S.D.J.**